UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE COINSTAR INC. SHAREHOLDER DERIVATIVE LITIGATION | MASTER FILE NO. C11-133 MJP |
| _____ | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS DERIVATIVE COMPLAINT FOR FAILURE TO MAKE DEMAND |
| This Document relates to: | |
| THE DERIVATIVE LITIGATION | |

This matter comes before the Court on Defendant Coinstar, Inc.'s ("Coinstar") motion to dismiss the shareholder derivative complaint. (Dkt. No. 89.) Having reviewed the motion, the response (Dkt. No. 95), the reply (Dkt. No. 100), Defendants' requests for judicial notice (Dkt. Nos. 92 and 102), and all related filings, the Court GRANTS Defendants' motion to dismiss and GRANTS Defendants' requests for judicial notice.

**Background**

This is a shareholder derivative action. Shareholder Plaintiffs MARTA/ATU Local 732 Employees Retirement Plan ("MARTA") and Melvin J. Brenner ("Brenner") are suing six current members of Coinstar's Board of Directors, one former member of the Board, and three

1   executive officers.  Specifically, Defendants Arik Ahitov ("Ahitov"), David Eskenazy

2   ("Eskenazy"), and Robert Sznewajs ("Sznewajs") are Coinstar directors and members of

3   Coinstar's Audit Committee.  (Compl. ¶¶ 30-32.)  Defendant Ronald Woodward ("Woodward")

4   is a Coinstar director and a member of Coinstar's Compensation and Nominating and

5   Governance Committees.  (Id. ¶ 33.)  Defendant Deborah Bevier ("Bevier") is a Coinstar director

6   and a member of Coinstar's Compensation Committee and was a member of the Audit

7   Committee during the relevant period.  (Id. ¶ 34.)  Defendant Daniel O'Connor ("O'Connor")

8   was a former Coinstar director during the relevant time period and was a member of the

9   Compensation Committee.  (Id. ¶ 35.)  Defendant Paul Davis ("Davis") is the Chief Executive

10  Officer ("CEO") and a Coinstar director.  (Id. at ¶ 36.)  Defendant Gregg Kaplan ("Kaplan") is

11  the President and Chief Operating Officer.  (Id. ¶ 37.)  Defendant Galen Smith ("Smith") is the

12  Corporate Vice President, Finance and Treasurer. (Id. ¶ 38.)  Defendant J. Scott Di Valerio ("Di

13  Valerio") is the Chief Financial Officer ("CFO").

14          Coinstar is a Delaware corporation with its principal place of business in Bellevue,

15  Washington.  Approximately 80% of Coinstar's revenues are generated by its wholly-owned

16  subsidiary Redbox, which rents standard definition, new release DVDs to consumers for $1 per

17  night.  Redbox offers DVD rentals via 30,000+ self-service kiosks, primarily located in mass

18  retailers, drug stores, restaurants, and convenient stores.

19          Before December 2008, Universal Studios, Twentieth Century Fox, and Warner Home

20  Video released their movies in DVD format to Redbox at the same time as they released their

21  movies to retailers selling the DVDs.  However, concerned that Redbox's $1 rentals hurt DVD

22  sales, the studios began to delay its release of movies to Redbox and, at one point, refused to

23  release DVDs to Redbox at all.  Redbox sued the movie studios and eventually Redbox entered

24

1  into 28-Day Delay Agreements whereby Redbox received DVDs 28 days after the studios first

2  released the movies through other channels.  The 28-Day Delay Agreements were signed

3  between February and April 2010.

4      Plaintiffs allege Coinstar officers false suggested that the 28-Day Delay Agreements

5  created a one-time problem for Redbox.  Specifically, Davis and DiValerio referred to the 28

6  Day Delay Agreement's impact as limited to 2010's second quarter and released bullish

7  guidance to the market on October 28, 2010 regarding Redbox's fourth quarter 2010 and full

8  year 2011 revenues.  As Plaintiffs argue, Defendants knew the agreements actually had a longer-

9  lasting, continuing impact on Coinstar's revenues.  According to a former Chief Accounting

10 Officer, Coinstar's October 2010 revenues did not track consistently with internal projections

11 and Defendant officers either received weekly reports or attended monthly meetings that should

12 have made them aware of these disappointing early 4Q10 results.  Plaintiffs believe Redbox , in,

13 fact, internally reforecasted projections for the remaining two months of the quarter.  Plaintiffs

14 assert Defendant directors must have also known given their roles supervising the company.

15     On January 13, 2011, Defendants pre-announced a short fall in its 4Q10 revenue and

16 earnings and reduced its FY11 revenue guidance.  In reducing its estimates for 4Q10, Coinstar's

17 stock price decreased more than 27% from $56.95 on January 13, 2011 to $41.50 the day after.

18 On February 3, 2011, Coinstar issued a press release announcing its actual 4Q10 and FY10

19 financial results and attributed the shortfall to: decreased sales as a result of the 28-Day Delay

20 Agreements, poor inventory management and controls, overstock of Blu-ray disks, and problems

21 with its rent and return anywhere service.  Coinstar's stock price again decreased to $38.96 on

22 February 4, 2011.  Plaintiffs sue on behalf of Coinstar, alleging Defendants breached their

23 fiduciary duty, abused their control, engaged in gross mismanagement, and unjust enrichment.

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 3

1                                    **Analysis**

2       1.  <u>Judicial Notice</u>

3           As a preliminary matter, Defendants request judicial notice of several documents: (1)

4    excerpts from Coinstar's Proxy Statement, (2) Coinstar's Restated Certificate of Incorporation,

5    (3) excerpts from Coinstar's Audit Committee Charter, and (4) various Form 4s related to

6    Coinstar Directors' stock sales. (Dkt. Nos. 92 and 102.)  The Court GRANTS Defendant's

7    requests for judicial notice.

8           Under Fed. R. Evid. 201(b), courts may take judicial notice of information not subject to

9    reasonable dispute.  Here, none of the documents are disputed by Plaintiffs as inappropriate for

10   judicial notice.  First Coinstar's proxy statement and Form 4s are SEC filings and therefore

11   subject to judicial notice.  <u>Metzler Inv. GMBH v. Corinthian Colls., Inc.</u>, 540 F.3d 1049, 1064

12   n.7 (9th Cir. 2008).  Judicial notice of SEC filings is appropriate because they are matters of

13   public record and are "capable of accurate and ready determination."  Fed. R. Evid. 201(b).

14   Second, courts routinely take judicial notice of a company's certificate of incorporation on a

15   motion to dismiss.  <u>Grassmueck v. Barnett</u>, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003)("As

16   certified public records kept by the Secretaries of State in Washington and Delaware, the Articles

17   fall directly into the category of items that the Ninth Circuit generally considers proper for

18   judicial notice.")  Finally, the Audit Committee Charter is subject to judicial notice because

19   Plaintiffs quote from the Charter in their complaint and the doctrine of incorporation by

20   reference applies.  <u>See, e.g.</u>, <u>In re Infonet Servs. Corp. Sec. Litig.</u>, 310 F.Supp. 2d 1106, 1113

21   (C.D. Cal. 2003)(on a motion to dismiss a securities fraud claim "the court may consider the full

22   text of the relevant documents to determine whether the plaintiffs have alleged material

23

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 4

1  misrepresentations or omissions"). The Court, therefore, takes into consideration the judicially-

2  noticed documents when considering Defendant's motion to dismiss.

3      2. <u>Motion to Dismiss</u>

4      Defendants move to dismiss for failure to make a demand on Coinstar's Board of

5  Directors prior to suit or to allege with factual particularity why demand is excused.  Del. Ch. Ct.

6  R. 23.1.  The Court agrees.

7      a. <u>Standard</u>

8      Derivative actions brought by shareholders to enforce a corporation's right of action are

9  governed by Rule 23.1 of the Federal Rules of Civil Procedure.  Under Rule 23.1, the complaint

10 must "state with particularity (A) any effort by the plaintiff to obtain the desired action from the

11 directors or comparable authority and, if necessary, from the shareholders or members; and (b)

12 the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  In

13 other words, when a plaintiff concedes no demand was made, the plaintiff must plead why the

14 demand requirement should be excused.   The demand requirements for a derivative suit are

15 determined by the law of the state of incorporation.  <u>Kamen v. Kemper Fin. Serv., Inc.</u>, 500 U.S.

16 90 (1991); <u>see also</u> <u>Potter v. Huges</u>, 546 F.3d 1051, 1055 (9th Cir. 2008)("[A] putative derivative

17 plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board

18 under applicable state law.")

19     In Delaware, a pre-suit demand on the Board is excused where plaintiffs plead

20 "particularized facts that create a reason to doubt that, as of the time the complaint if filed, the

21 board of directors could have properly exercised its independent and disinterested business

22 judgment in responding to a demand."  <u>Rales v. Blasband</u>, 634 A.2d 927, 934 (Del. 1993).

23 Courts must determine whether the Board could have considered a demand without being

24

1   affected by improper influences.  <u>Aronson v. Lewis</u>, 473 A.2d 805 (1984).  To establish lack of

2   independence, a plaintiff must show that the directors are so "beholden to the [other directors] or

3   so under their influence that their discretion would be sterilized." <u>Rales</u>, 634 A.2d at 936.

4   Directors are interested if there is a "substantial likelihood" that the directors would be

5   personally liable for the challenged transaction or business decision. <u>Id.</u>  A mere threat of

6   liability, however, is insufficient.  <u>Aronson</u>, 476 A.2d at 815.

7              b.  <u>Application</u>

8        In this case, Delaware law governs the Rule 23.1 analysis because Coinstar is

9   incorporated in Delaware.  Under Delaware law, the Court finds Plaintiffs fail to plead

10  particularized facts showing Coinstar directors were interested and a pre-suit demand would have

11  been futile.

12       First, there is not a "substantial likelihood" that any of Coinstar's directors are personally

13  liable for the misstatements that survived dismissal in the related Securities Litigation.

14  Coinstar's Certificate of Incorporation contains an exculpation clause that limits the personal

15  liability of Coinstar directors.  (Schlesinger Decl., Ex. B (Coinstar Restate Certificate of

16  Incorporation § VI.A (Oct. 26, 2010)); see Del. Code Ann. Tit. 8, § 102(b)(7)(providing that a

17  Delaware corporation may eliminate or limit the personal liability of a director).  Under the

18  exculpation clause, Coinstar's directors are only liable if they breach the duty of loyalty or act in

19  bad faith.  Plaintiff's complaint, however, is vague on any misconduct by Coinstar's directors, let

20  alone breaches of loyalty.  This is particularly problematic given that the statements surviving

21  the Securities Litigation are not press releases or SEC filings, which Defendant directors may

22  arguably have been expected to review.  The surviving statements are those made by Defendant

23  <u>officers</u> at various investor conferences.  Since there is no allegation that Defendant <u>directors</u>

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 6

1    knew of the officers' statements and/or consciously permitted the false statements to persist in

2    the market, the Defendant directors are not personally liable for the officers' misstatements.

3    Notably, even the director who made the alleged misstatement is not personally liable.  As we

4    already determined in the Securities Litigation, Davis's statements as CEO of Coinstar either fell

5    within the safe harbor provision or were not false.

6          Second, Audit Committee membership does not subject Coinstar's directors to personal

7    liability.  Plaintiffs believe four of Coinstar directors were in a position to recognize red flags

8    and accordingly investigate because, as Audit Committee members, they were charged with

9    overseeing Coinstar's financial statements for the benefit of shareholders. (Schlensinger Decl.,

10   Ex. C at ¶ 48 (Audit Committee Charter)).  But general allegations, based simply on a

11   defendant's membership on a board or committee, without more, do not trigger liability as a

12   matter of law.  <u>Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Lundgren</u>, 579 F.

13   Supp. 2d 520, 532 (S.D.N.Y. 2008).  Plaintiffs fail to allege any particularized facts suggesting

14   the Audit Committee had an actual role in the alleged misstatements or that the Committee knew

15   of inaccuracies in the challenged statements.  The Audit Committee Defendants are not

16   personally liable based on their committee membership alone.  <u>Guttman</u>, 823 A.2d at 498 ("The

17   complaint is entirely devoid of particularized allegations of fact demonstrating that the outside

18   directors had actual or constructive notice of the accounting improprieties.").

19         Third, the "core operations" doctrine does not apply.  Plaintiffs rely on <u>Pfeiffer v. Toll</u> to

20   argue directors are liable because they are presumed to have knowledge about information

21   implicating the company's core operations. 989 A.2d 683 (Del. Ch. 2010).  The Court again

22   disagrees.  The portions of the <u>Pfeiffer</u> decision cited by Plaintiffs do not address the heightened

23   "particularity" pleading standard required for demand futility under Rule 23.1.  Instead, they

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 7

1    address whether plaintiffs in that case adequately alleged insider trading under the plaintiff-

2    friendly Rule 12(b)(6) standard. Id. at 693–94.  In derivative actions like this, courts "have

3    repeatedly held that a plaintiff must allege more than that directors should have known or must

4    have know about matters relating to the corporation's 'core business.'" In re Accuray, Inc.

5    S'holder Deriv. Litig., 757 F.Supp.2d 919, 928 (N.D. Cal. 2010).  There is not a substantial

6    likelihood that Coinstar's directors are liable for breach the duty of loyalty on the basis of the

7    core operations doctrine.

8        Fourth, Plaintiffs fail to plead facts showing that the board of directors were improperly

9    interested.  As Plaintiffs concede, at least half of an even-numbered board needs to be interested

10   in order for a pre-suit demand to be excused.  Beneville v. York, 769 A.2d 80, 85-86 (Del. Ch.

11   2000); see also Shaev v. Saper, 320 F.3d 373, 378 (3d Cir. 2003)(under Delaware law, plaintiff

12   must allege demand futility for half of an even-numbered board).  Here, Plaintiffs filed their

13   original complaints on April 18, 2011.  At that time, Coinstar's Board had six members;

14   therefore, to survive the demand futility analysis, Plaintiff must allege that at least three of

15   Coinstar's directors lacked independence.  (Compl. ¶¶ 30-36.) At most, Plaintiffs allege Davis

16   was the only interested director.  As discussed above, however, the Court found all claims based

17   on Davis's statements were not subject to liability.

18       Fifth, Defendants' stock sales do not suggest the directors knew of the officers'

19   misstatements.  Plaintiffs argue Defendants engaged in insider trading and grossed more than

20   $2.8 million in stock sales during November 2010.  Yet, the stock sales were not out of the

21   ordinary considering prior trading activity.  Eskenazy's sale of some 9,000 shares is in keeping

22   with his prior sale of 8,500 in March 2010 and 24,000 in Mary 2010.  (Chessari Decl., Ex. 1-3).

23   Woodward's sale of 12,500 shares is in keeping with prior sales of 14,265 in June 2008 and

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 8

23,500 shares in May 2010.  (Id. Ex. 10-13.) Notably, Bevier did not sell any stock in November 2010.  As stated in Guttman v. Huang, "it is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." 823 A.2d 492, 503 (Del.Ch. 2003).  Since it does not "logically flow" that directors selling stock in November 2010 knew about the officers' misstatements based on their stock sales, as Plaintiffs argue, the Court finds the directors are not subject to liability.

Sixth, Defendant officers' business and personal relationships do not establish a lack of independence.  The only entanglement Plaintiff alleges is that between Eskenazy and Woodward, who both sit on the board of MagnaDrive Corporation.  (Compl. ¶¶ 31, 33.)  However, an allegation that two directors served together on a few boards of unaffiliated companies does not show lack of independence.  Highland Legacy Ltd. v. Singer, Case No. 1566-N, 2006 WL 741939 at *5 (Del. Ch. Mar. 17, 2006).

In sum, Plaintiffs did not make a demand, so the only inquiry is whether Plaintiff's failure to make a pre-suit demand on Coinstar's Board is excused because it would have been futile. (Compl.¶ 89). Since the directors' stock sales and committee memberships are not enough to suggest they are liable for misstatements made by Defendant officers, the Court finds Plaintiff's failure to make a demand is not excused.

\\

\\

\\

\\

\\

1

**Conclusion**

2          The Court GRANTS Coinstar's requests for judicial notice.  The Court GRANTS

3  Coinstar's motion to dismiss for failure to state a claim.  Plaintiffs fail to allege particularized

4  facts suggesting a pre-suit demand on Coinstar's board of directors would have been futile.  The

5  Court allows Plaintiff leave to amend within ten (10) days of entry of this Order.

6          The clerk is ordered to provide copies of this order to all counsel.

7          Dated November 14, 2011.

8

9

10                                                    Marsha J. Pechman
                                                      United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DERIVATIVE COMPLAINT FOR
FAILURE TO MAKE DEMAND- 10